**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 20, 2015**

# In the Court of Appeals of Georgia

 A15A1098. WARD v. SMITH

BARNES, Presiding Judge.

Darrin Ward appeals from the temporary order of the trial court that, among other things, domesticated an Indiana custody order, modified custody of his son, and held him in contempt of an earlier order to return his child to Georgia. Ward contends multiple errors on appeal, and following our review, we affirm the trial court's order.

Ward and Cheryl Smith were divorced in 2006 while living in Indiana and had one son together, P. W. The Indiana court entered an order of relocation on June 24, 2008, which permitted Smith to relocate with P. W. to Camden County, Georgia. Per the order, Ward was granted visitation rights, including every Labor Day weekend. When Ward did not return P. W. to Georgia after his 2014 Labor Day visit, Smith filed a "Petition for Enforcement of Custody Determination" in the Superior Court of Camden County to, among other things, enforce the Indiana order and return P. W.

to Georgia pursuant to its terms, modify visitation, find Ward in contempt, and domesticate the Indiana order.

On September 11, 2014, the same day that Smith filed her petition for enforcement, the trial court entered an order for "an expedited hearing on the issue of enforcement" which required Ward to appear at a September 25, 2014 show-cause hearing and return P. W. to the jurisdiction of the court so that Smith could take physical custody of the child. Through local counsel, on September 24, Ward filed a limited response in which he contested the jurisdiction because the Indiana court had made the initial custody determination and retained continuing jurisdiction over the matter. He further notified the court that he had filed a petition for emergency modification of custody in Indiana on September 5, 2014, and that a hearing had been set for October 30, 2014. Ward also requested that the court stay the proceeding until it "communicate[d] with the Indiana Court as to the most appropriate forum." Ward did not attend the scheduled hearing on September 25 or produce the child, but his attorney appeared and again raised the issue of jurisdiction. The hearing was not transcribed.

On September 30, 2014, the trial court held a telephone conference with the Indiana court, after which the Indiana court surrendered all jurisdiction to the Georgia

2

court. The Indiana court noted that it had not granted Ward an ex parte order of custody and had "not authorized Mr. Ward to retain the child." The Indiana court further noted, in reference to the Georgia court's September 11 order, that because the Georgia court had previously "entered an ex parte order . . . to enforce the parenting time, we'll defer that to you . . . [and] our sheriff would provide full faith and credit to your order."

The trial court subsequently entered an order on October 6, 2014, nunc pro tunc to September 30, 2014, in which, after noting that Indiana had surrendered jurisdiction to Georgia, the court determined that Georgia was the home state of P. W. and that "and jurisdiction now lies in the Superior Court of Camden County." The trial court set another hearing for October 7, 2014 on Smith's petition for enforcement of custody determination. The Indiana court's order surrendering jurisdiction and vacating the hearing pending in that state was also attached to the October 6 order. Ward returned the child to Georgia on October 6, 2014, and filed an answer and counterclaim seeking custody of P. W.

Following the October 7th hearing, the trial court entered an order domesticating the 2008 Indiana custody order, continuing joint legal custody with both parents and primary physical custody with Smith, finding Ward in contempt of

3

the September 11 order because of Ward's "interference with lawful custody of [P. W.] by his willful refusal to return the . . . child to the jurisdiction of the Court as so ordered." It also awarded Smith expenses of litigation incurred during the course of the proceedings. Ward filed a motion for reconsideration, essentially asserting that the trial court did not have jurisdiction to find him in contempt of the September 11 order, and also that the litigation expenses award was unduly financially burdensome. After a hearing on the motion, the trial court entered an amended order permitting Ward to pay the legal expenses in monthly installments, but denying his motion for reconsideration regarding the contempt finding. Ward appeals from that order.

1. Ward contends that he was not given proper mandatory notice of registration in accordance with OCGA § 19-9-85 of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA).[1] He asserts that before the 2008 Indiana custody order could be enforced by the Georgia court, pursuant to OCGA § 19-9-85, the custody

---

[1] OCGA § 19-9-40 et seq.

4

order had to be registered and he had to be given a 20-day notice of the registration.[2] We do not agree.

The enforcement remedies under the UCCJEA are cumulative, see OCGA § 19-9-83 (b), and enforcement via registration or domestication of a child court determination pursuant to OCGA § 19-9-85 is only one of the available remedies. Although Smith included a request to domesticate the Indiana determination of custody in her petition, she filed a petition for enforcement of the Indiana child custody determination under OCGA § 19-9-83[3] and OCGA § 19-9-88. OCGA § 19-9-

---

[2] OCGA § 19-9-85 provides, in pertinent part, that when registering a foreign custody determination, the trial court must "[s]erve notice upon the persons named . . . and provide them with an opportunity to contest the registration in accordance with this Code section. . . . A hearing to contest the validity of the registered determination must be requested within 20 days after service of notice." OCGA § 19-8-85 (b) (2); OCGA § 19-9-85 (c) (2).

[3] OCGA § 19-9-83 provides:
(a) A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this article or the determination was made under factual circumstances meeting the jurisdictional standards of this article and the determination has not been modified in accordance with this article.

(b) A court of this state may utilize any remedy available under other laws of this state to enforce a child custody determination made by a court of another state. The remedies provided in this part are cumulative and do not affect the availability of other remedies to enforce a child

5

88 provides for an expedited hearing to enforce a custody determination and requires the court to "issue an order directing the respondent to appear in person with or without the child at a hearing," and that "[*t*]*he hearing must be held on the next judicial day after service of the order unless that date is impossible*." (Emphasis supplied.) OCGA § 19-9-88 (d). The trial court did not address the domestication of the Indiana order in the September 11 order, and, in fact, the Indiana order was not domesticated until after the Indiana court relinquished jurisdiction.

Even if, as Ward asserts, Smith's enforcement petition could be construed as a petition to domesticate the Indiana visitation order, OCGA § 19-9-85 provides that upon service of notice, Ward be provided "with an opportunity to contest the registration in accordance with this Code section," and "[a] hearing to contest the validity of the registered determination must be requested *within 20 days* after service of notice." (Emphasis supplied.) OCGA § 19-9-85 (c) (2). Ward was served with notice of the petition on September 17, 2014, and on September 24, 2014, through the filing of a limited response, and again at the October 7 hearing on the petition, Ward challenged the Georgia court's jurisdiction over the enforcement of the Indiana

_____

custody determination.

6

order.[4] As noted previously, the trial court did not domesticate the Indiana order until October 7, 2014, and thus Ward was given the opportunity to contest the domestication pursuant to OCGA § 19-9-85.

Thus, this enumeration fails.

2. In related enumerations of error, Ward contends that the trial court erred in finding him in contempt of the September 11 and October 6 orders. He contends that the Georgia court did not have authority to enforce the Indiana order until the Indiana order was domesticated on October 7, 2014, and that the September 11 order was void because Indiana still had jurisdiction at that time. We do not agree.

We first note that while Ward argues that he was also found in contempt of the trial court's October 6 order, the trial court's finding of contempt appears to relate only to a willful violation of the direction in the September 11 order that Ward return the child to Georgia. The trial court found that Ward was

> in willful contempt of the Court Order of September 11, 2014, due to his interference with lawful custody of the minor child P. W., by his willful refusal to return the minor child to the jurisdiction of the Court as so ordered. [Ward ] willfully failed to adhere to the order of this court to

[4] The person seeking to challenge the registration of a order under OCGA § 19-9-85 must show, among other things, that the issuing court did not have subject matter jurisdiction when it rendered the custody determination.

7

return the child once it was determined on September 30, 201[4] that the State of Georgia had jurisdiction in his matter. [Ward] did not return the child until October 6, 2014.

Generally, subject-matter jurisdiction [for purposes of modifying a foreign custody decree] cannot be conferred unless the foreign judgment has been domesticated. *Pearson v. Pearson*, 263 Ga. 400, 401 (435 SE2d 40) (1993).

OCGA § 19-9-63 provides that, except as allowed by the temporary emergency jurisdiction provision of the UCCJEA, a Georgia court may not modify a child-custody determination made by a court in another state unless a court of this state has jurisdiction to make an initial determination under paragraph (1) or (2) of subsection (a) of Code Section 19-9-61 and the court of the other state determines it no longer has exclusive, continuing jurisdiction under Code Section 19-9-62 or that a court of this state would be a more convenient forum under Code Section 19-9-67; or a court of this state or a court of the other state determines that neither the child nor the child's parents or any person acting as a parent presently resides in the other state.

(Footnotes and punctuation omitted.) *Delgado v. Combs*, 314 Ga. App. 419, 426 (1) (724 SE2d 436) (2012). And "[a] judgment rendered by a court without jurisdiction of the subject matter is absolutely void.'" *Crotty v. Crotty*, 219 Ga. App. 408 (465 SE2d 517) (1995).

8

The issue in this case, however, is not the *modification* of the Indiana custody dispute, but its *enforcement* via a contempt citation.[5] Under Part 3 of the UCCJEA, in relation to jurisdiction and enforcement of foreign decrees, "[a] court of this state which does not have jurisdiction to modify a child custody determination may issue a temporary order enforcing," among other things, "[a] visitation schedule made by a court of another state." OCGA § 19-9-84 (a) (1). Further, OCGA § 19-9-83 provides that Georgia courts "shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this article" and "may utilize any remedy available under other laws of this state to enforce a child custody determination made by a court of another state."

> With regard to a non-resident parent, OCGA § 19-9-70 (b) provides that,
>
> [i]f a party to a child custody proceeding whose presence is desired by the court is outside this state, the court may order that a notice given pursuant to Code Section 19-9-47 include a statement directing the party to appear in person with or without the child and informing the party that failure to appear may result in a decision *adverse* to the party.

---

[5] The parties do not dispute that the Georgia court had jurisdiction over the custody of P. W. when its order and amended orders modifying custody were filed on October 16, 2014 and November 17, 2014.

(Emphasis supplied.)

Regarding temporary orders such as the September 11 order seeking to enforce the visitation provisions of the Indiana child custody determination, the UCCJEA provides that

> [i]f a proceeding for enforcement under this part is commenced in a court of this state and the court determines that a proceeding to modify the determination is pending in a court of another state having jurisdiction to modify the determination under Part 2 of this article, the enforcing court shall immediately communicate with the modifying court. *The proceeding for enforcement continues unless the enforcing court, after consultation with the modifying court, stays or dismisses the proceeding*.

OCGA § 19-9-87.

Thus, contrary to Ward's assertion, under the UCCJEA, an order for the enforcement of a visitation agreement in a foreign custody determination is not void because of the originating court's continued jurisdiction. Applying the principles to this case, the September 11 order was in effect before the Indiana Court surrendered jurisdiction to the Georgia court, and, as the Indiana court noted, the Georgia court's September 11 order is entitled to "full faith and credit." When Ward did not bring the child back to Georgia as directed by the September 11 order, the Georgia court was

10

authorized to use its contempt powers to enforce the order. "Every court has power to compel obedience to its judgments, orders, and processes." *Gaston v. Shunk Plow Co.*, 161 Ga. 287, 298 (130 SE 580) (1925). See OCGA § 19-9-83 (a).[6]

Accordingly, the trial court did not err in finding Ward in contempt of the September 11, 2014 order. [7]

3. Contrary to Ward's contention, the trial court did not err in awarding attorney fees pursuant to OCGA § 19-9-92. The trial court ordered Ward to

> pay [Smith] the total sum of $5,480.00 within ninety (90) days as envisioned by . . . OCGA § 19-9-92 "Awarding of Expenses" such that are necessary and reasonable expenses incurred by or on behalf of the party . . . including costs, communication expenses, attorney's fees,

---

[6]To the extent that Ward is challenging the Georgia court's jurisdiction over his person, the defense of lack of personal jurisdiction must be raised before or at the time of pleading, and failure to raise the defense in the answer or by motion filed before or simultaneously with the answer constitutes a waiver of the defense. *Whitley v. Hsu*, 260 Ga. 539 (397 SE2d 694) (1990). Ward did not challenge the court's jurisdiction over his person in any of his responsive pleadings. Consequently, the trial court had both subject-matter and personal jurisdiction.

[7]At the hearing on Ward's motion for reconsideration, Ward's attorney testified that following the conversation between the Indiana and Georgia courts on September 30, 2014, after which the Indiana court surrendered jurisdiction, he and Smith's attorney had agreed that P. W. could be returned the week of the October 7th hearing. However, he conceded that the attorneys did not have the authority to enter into a consensual agreement, without informing the court, that usurped the court's September 11th order directing Ward to return the child to Georgia.

investigative fees, expenses for witnesses, and travel expenses (if any) during the course of the proceedings.

The trial court later amended the order upon Ward's motion for reconsideration so that, rather than pay a lump sum of $5,480 in attorney fees, Ward was permitted to pay $300.00 per month until the fees were paid in full or modified by the court.

OCGA § 19-9-90 provides that upon finding that the petitioner is entitled to immediate physical custody of the child, "[t]he court shall award the fees, costs, and expenses authorized under Code Section 19-9-92 and may grant additional relief, including a request for the assistance of law enforcement officials, and set a further hearing to determine whether additional relief is appropriate." OCGA § 19-9-90 (a) and (b). OCGA § 19-9-92 specifies that

the court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

OCGA § 19-9-92 (a). This court has held that "OCGA § 19-9-92 applies only to the prevailing party in an enforcement proceeding." *Delgado v. Combs*, 314 Ga. App. at 419, 426.

Here, although Ward argues that the trial court did not have jurisdiction to enforce the Indiana order because it was not registered and the proceeding was not an enforcement proceeding as contemplated by OCGA § 19-9-92, Smith's petition was brought primarily under OCGA §§ 19-9-83 and 19-9-88 to enforce the visitation provisions of an existing Indiana custody determination. That she also requested modification and domestication of the custody determination does not change the result. Thus, this enumeration fails.

4. Ward also contends that the trial court violated his due process rights by failing to provide him with notice that the October 7, 2014, hearing was a contempt proceeding. In Smith's complaint, she requested that the trial court find Ward in contempt for not abiding by the Indiana visitation agreement. The trial court's September 11 order indicated that a hearing would be held to "show cause why [Smith's] prayers should not be granted." At the October 7 hearing on the petition, it was again indicated that Smith was asking for the court to "hold Ward in contempt." And on the second day of the hearing, the trial court explained to counsel

13

that, "because your client violated my court order, he did not provide any evidence that a lawyer told him it was okay to do that. So you argue for your client's contempt and I'll determine what kind of sanctions I'm going to take against your client for that." Ward did not object to the trial court's ruling, nor did he argue to the trial court that he had no notice that the court would hold contempt proceedings. Further, Ward did not argue lack of notice in his motion for reconsideration, but argued instead that the trial court did not have personal jurisdiction over him for contempt purposes when it issued its show cause order on September 11th.

"[B]ecause this is a court for the correction of errors, we will not consider any issues raised on appeal that were not raised and preserved in the trial court." *Brown v. State*, 246 Ga. App. 517, 521 (5) (541 SE2d 112) (2000). This argument has been waived on appeal because Ward failed to assert it below.

5. Ward last maintains that the trial court erred in finding him in contempt and requiring him to pay a $500 fine because he did not "act willfully contrary" to the trial court's September 11 order. He again argues that the Indiana court had exclusive jurisdiction when the Georgia court issued its September 11 order, but this argument was decided adversely to him in Division 2.

Regarding whether his actions were willful, "a trial court has broad discretion to determine if a party is in contempt of its order, and the exercise of that discretion will not be reversed on appeal unless grossly abused." (Citation omitted.) *Hunter v. Hunter*, 289 Ga. 9, 11 (4) (709 SE2d 263) (2011). Given Ward's failure to return the child to Georgia per the visitation provisions in the custody determination as directed by the court, we discern no abuse of discretion under the facts of this case.

*Judgment affirmed. Ray and McMillian, JJ., concur in judgment only.*