

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JENNIFER L. SCHUTTER, | ) | |
| | ) | |
| Respondent, | ) | WD86995 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | May 6, 2025 |
| PAUL J. SEIBOLD, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Platte County, Missouri**
**The Honorable Daren L. Adkins, Judge**

**Before Division One:** Karen King Mitchell, Presiding Judge, and
Lisa White Hardwick and Mark D. Pfeiffer, Judges

Paul Seibold (Father) appeals from the judgment of the Circuit Court of Platte

County, Missouri (Missouri court), denying, on the basis of the Uniform Child Custody

Jurisdiction and Enforcement Act (UCCJEA), §§ 452.700-452.930,[1] his family access

motion and motion for contempt against Jennifer Schutter (Mother) and his motions to

modify child support. Father raises four points on appeal. He asserts that the Missouri

court erred in dismissing his family access and contempt motions because (1) the

UCCJEA does not govern whether the Missouri court has jurisdiction to hear motions to

---

[1] All statutory references are to the Revised Statutes of Missouri (Supp. 2023).

enforce its prior custody determinations, and (2) the UCCJEA permits the Missouri court to enforce a custody order issued by the Tarrant County, Texas court (Texas court) (Points I and II, respectively).  Father also argues that the Missouri court erred in denying his request, made in his motion for new trial, to amend his pleading seeking enforcement of the Texas court's custody order because Missouri courts are required to grant leave to amend when sustaining a motion to dismiss (Point III).  Finally, Father contends that the Missouri court erred in dismissing his motions to modify child support because the UCCJEA does not govern support proceedings (Point IV).  We affirm in part and reverse in part.

## Background[2]

Father and Mother have actively litigated child custody and support issues for the past thirteen years, filing dozens of motions with the Missouri court.  This is the second appeal by the parties regarding custody issues.  For purposes of this appeal, we recite only the background information relevant to the issues raised here.

Father and Mother were married on November 30, 2002, and one child (Son) was born of the marriage.  Son has extensive medical, educational, and therapy needs and requires 24-hour assistance and supervision.  Father and Mother separated on March 5, 2012, and the initial judgment of dissolution was entered on December 31, 2013.  The court awarded sole legal custody of Son to Mother and joint physical custody of Son to

---

[2] "We view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations."  *Houston v. Crider*, 317 S.W.3d 178, 186 (Mo. App. S.D. 2010).

Mother and Father, and the court ordered Father to pay $2,620 in monthly child support.[3]

On March 7, 2019, the Missouri court entered a "First Amended Judgment of Modification," which approved Mother's relocation to Texas with Son, granted Father periods of supervised visitation with Son in both Missouri and Texas, and ordered Father to pay $3,000 per month in child support (the 2019 Modification).

On November 1, 2019, Father filed a motion to modify custody and child support. Thereafter, Father filed several other motions including a family access motion[4] and a motion to quash Mother's garnishment of his wages. At that point, the Missouri court concluded that it did not have exclusive, continuing jurisdiction under the UCCJEA and that, even if it did, it was an inconvenient forum and Texas was a more appropriate forum under the UCCJEA. In dismissing Father's motions, the Missouri court ordered that "all motions now pending by and between the parties in this case, or any sub-case, are hereby dismissed." Father appealed to this court, arguing, in part, that the Missouri court erred in dismissing, pursuant to the UCCJEA, his family access motion and motion to quash garnishment because the UCCJEA governs only Missouri's jurisdiction to make child custody determinations and does not govern any other proceedings. We reversed in favor of Father, concluding that the Missouri court erred in dismissing his family access motion and motion to quash on the basis of the UCCJEA. *Schutter v. Seibold*, 632 S.W.3d 820, 831-32 (Mo. App. W.D. 2021) (*Schutter I*).

---

[3] Neither party challenges the Missouri court's jurisdiction to make the initial custody determination.

[4] An aggrieved person may file a family access motion if a parent denies or interferes with custody or visitation without good cause. § 452.400.3.

3

Following *Schutter I*, Father continued to file, in the Missouri court, family access motions alleging Mother had denied Father parenting time with Son in violation of the 2019 Modification. On February 23, 2023, the Missouri court issued a Family Access Judgment in which the court found that Mother had denied or interfered with Father's custody or visitation on two occasions without good cause. Accordingly, the court awarded Father two specific periods of compensatory time to be exercised in May and June 2023. The same day the court entered the Family Access Judgment, Father filed, with the Missouri court, a motion to "modify, correct child support."[5]

On May 9, 2023, Father filed, in the Missouri court, another family access motion alleging that he had travelled to Texas to visit Son per the Family Access Judgment, but Mother denied him time with Son. On May 30, 2023, Father also filed, in the Missouri court, a motion for contempt, claiming, among other things, that Mother was in violation of the controlling parenting plan and the February Family Access Judgment. The next day, the Missouri court made a docket entry regarding a conference it held with the Tarrant County, Texas court. According to the entry, the Missouri court would "continue to enforce its Judgments until such time as [the] TX [court] enters a child custody Order or Modificatio[]n Judgment."[6]

---

[5] Father again sought modification of child support in a response he filed with the Missouri court on December 19, 2023. In that response, Father alleged that Mother had voluntarily reduced her income by nearly fifty percent and, for that and other reasons, he requested a modification of his child support obligation.

[6] According to Mother's brief, on June 1, 2023, the Texas court issued an order stating, "This Court finds that it has jurisdiction over this case. The Court in Missouri will hear enforcements, but not modifications, until the Texas [Court] enters an order,

On August 31, 2023, the Missouri court entered a judgment of contempt, finding that Mother had violated the February Family Access Judgment. On October 5, 2023, Father filed, in the Missouri court, yet another family access motion alleging that Mother continued to deny Father time with Son in violation of the August 2023 contempt judgment. In a related motion for contempt filed in the Missouri court on December 19, 2023, Father alleged that Mother had denied him a total of 21 days of compensatory parenting time to which the parties had previously agreed.

Mother moved to dismiss Father's family access and contempt motions, alleging that she had registered the 2019 Modification with the Texas court and that court had exercised its jurisdiction by issuing a temporary custody order (Texas Order) on September 29, 2023, thus depriving the Missouri court of jurisdiction. Mother provided an uncertified copy of the Texas Order with her motion. The Texas Order stated that, from September through December 2023, Father was to exercise his parenting time with Son "on the same weekend set forth in the Court Ordered Parenting Plan [f]rom Missouri," but that those visits were all to take place in Texas, not Missouri. And, at the conclusion of that four-month period, "the parties shall revert to the possession and access schedule and locations set forth by the Court Ordered Parenting Plan from Missouri."

Following a hearing on December 20, 2023, the Missouri court dismissed all of Father's pending motions, including the motions at issue in this appeal, holding that the

whether temporary or final." The June 2023 order from the Texas court is not part of the record on appeal.

5

Texas Order deprived the Missouri court of jurisdiction over any of those matters. The Missouri court concluded that "as [its] custody determination has been modified by a court having competent jurisdiction," the Missouri court "has lost exclusive, continuing jurisdiction pursuant to [the UCCJEA] over matters involving the custody and support of" Son "as well as the ability to enforce the Missouri Judgment as to custody pursuant to [the UCCJEA]." The Missouri court dismissed "all pending Family Access Motions . . . and Motions for Contempt," and declared that neither party would be permitted to file any further pleadings in the case, or its subcases, except an appeal.

Father filed a motion for new trial, in which he argued that the Missouri court erred in dismissing his pending family access and contempt motions because (1) they merely sought enforcement of the Missouri court's prior custody determinations, and (2) the UCCJEA permitted the court to grant his motions to the extent they sought to enforce the Texas Order. Father also argued that the Missouri court erred in dismissing his motions to enforce the Texas Order without giving him an opportunity to amend his pleadings to comply with the UCCJEA procedural requirements for moving to enforce an out-of-state custody order. Following a hearing on February 16, 2024, the Missouri court denied Father's motion for new trial.

This appeal follows.

## Standard of Review

"In a court tried case, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Schutter I*, 632 S.W.3d at 828.

6

"Whether Missouri has jurisdiction to determine custody under the UCCJEA is a legal question that is reviewed *de novo*." *Id.*

## Analysis

Father raises four points on appeal. He argues that the Missouri court erred in dismissing his family access and contempt motions because (1) the UCCJEA does not govern whether the Missouri court has jurisdiction to hear motions to enforce its prior custody determinations, and (2) the UCCJEA permits the Missouri court to enforce the Texas Order (Points I and II, respectively). Father also asserts that the Missouri court erred in denying his request, made in his motion for new trial, to amend his pleading seeking enforcement of the Texas Order because Missouri courts are required to grant leave to amend when sustaining a motion to dismiss (Point III). Finally, Father contends that the Missouri court erred in dismissing his motions to modify child support because the UCCJEA does not govern support proceedings (Point IV).

"In Missouri, child custody jurisdiction is governed by the UCCJEA."[7] *Schutter I*, 632 S.W.3d at 829. Section 452.740 of the UCCJEA "governs initial child custody determinations and prioritizes home state jurisdiction over all other jurisdictional bases." *Id.* Section 452.745.1 "provides that a court [such as the Missouri court] that has made

---

[7] "Missouri courts interpret the UCCJEA jurisdictional provisions to dictate whether a Missouri court has the statutory authority to grant relief in a particular matter, not whether a Missouri court has subject matter jurisdiction." *Schutter v. Seibold*, 632 S.W.3d 820, 828 n.3 (Mo. App. W.D. 2021) (*Schutter I*) (quoting *Blanchette v. Blanchette*, 476 S.W.3d 273, 279 (Mo. banc 2015)). Because the UCCJEA uses the term "jurisdiction" rather than "authority," we also will use the term "jurisdiction" when analyzing the Missouri court's authority to grant relief in this case. *Id.*

an initial child custody determination 'has exclusive continuing jurisdiction over the determination' until certain determinations under the statute are made."[8] *Id.* (quoting § 452.745.1).

"The jurisdictional provisions of sections 452.745 and 452.770 apply to 'child custody determination[s].'" *Id.* at 830. The UCCJEA defines "child custody determination" as

> A judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, or modification order. The term shall not include an order relating to child support or other monetary obligation of an individual.

*Id.* (quoting § 452.705(3)).

"Our 'primary rule of statutory construction is to give effect to legislative intent as reflected in the plain language of the statute at issue.'" *Thompson v. Metcalf*, 700 S.W.3d 581, 588 (Mo. App. W.D. 2024) (quoting *Harpagon MO, LLC v. Bosch*, 370 S.W.3d 579, 583 (Mo. banc 2012)). "If the intent of the legislature is clear and unambiguous, by giving the language used in the statutes its plain and ordinary meaning, then [we are] bound by that intent and cannot resort to any statutory construction in interpreting the statute." *Id.* (quoting *Harpagon*, 370 S.W.3d at 583).

---

[8] "A court that has continuing jurisdiction under section 452.745 to make a child custody determination may, however, decline to exercise its jurisdiction if it determines that it is an inconvenient forum under section 452.770," considering the factors listed in section 452.770. *Schutter I*, 632 S.W.3d at 829.

**I.    The Missouri court did not err in dismissing Father's family access and contempt motions for lack of jurisdiction under the UCCJEA (Point I).**

In Point I, Father asserts that the Missouri court erred in dismissing his family access and contempt motions on the basis of the UCCJEA because the UCCJEA does not govern whether the Missouri court has jurisdiction over motions brought to enforce its own custody determinations.  We disagree.

In *Schutter I*, this court concluded that the Missouri court erred in dismissing Father's family access motion on the basis of the UCCJEA because a "family access motion does not seek a child custody determination; rather it seeks to enforce an existing custody or visitation determination." *Schutter I*, 632 S.W.3d at 832.  And "[t]he UCCJEA does not expressly address the enforcement of a custody determination made by a court of a state that no longer has jurisdiction to modify that determination under section 452.745." *Id.*  But this court also noted that, "*unless and until the custody determination is modified by a court having jurisdiction*, the [Missouri] court has authority to enforce the current determination even though it may have lost jurisdiction to modify it." *Id.* at 833 (emphasis added).  Relying on the italicized language in *Schutter I*, the Missouri court determined in the present case that the Texas court had modified Missouri's custody determination, thus depriving the Missouri court of jurisdiction over custody matters.

Father argues that the Texas court "hardly modified" Missouri's custody determination because the Texas Order changed Father's parenting time for the months of September through December 2023 only.  And the Texas Order provided that, at the

9

conclusion of the specified period, the parties would revert to the parenting plan in the 2019 Modification. Thus, according to Father, the Texas Order did not fully modify Missouri's custody determination and, in the absence of an order from Texas fully modifying Missouri's determination, the Missouri court was not deprived of jurisdiction to rule on Father's family access and contempt motions.

Father also contends that, once the Texas court issues a child custody determination fully modifying Missouri's determination, *Schutter I* dictates that the Missouri court could no longer enforce the terms of the 2019 Modification going forward, but *Schutter I* would not preclude Father from seeking enforcement of the 2019 Modification as it relates to custody issues arising before the Texas court issues its full modification. According to Father, the UCCJEA simply does not bar the Missouri court from exercising jurisdiction to enforce its own custody determinations.

Mother contends the Texas Order modified the 2019 Modification and should be considered a child custody determination. We agree. "A 'child custody determination' is defined in the UCCJEA as "a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, *temporary*, initial, or modification order." *Schutter I*, 632 S.W.3d at 830 (quoting § 452.705(3)) (emphasis added). Thus, the plain language of the UCCJEA's definition of "child custody determination" includes temporary orders like the Texas Order and contradicts Father's argument that the definition "plainly" excludes temporary changes. To hold that Missouri still retained jurisdiction to enforce the 2019 Modification but Texas had jurisdiction to enforce the Texas Order would defeat the

10

purpose of the UCCJEA, which is "to promote cooperation among state courts and avoid jurisdictional competition and conflict." *Grega v. Grega*, 524 S.W.3d 150, 155 (Mo. App. E.D. 2017). And the fact that the Texas Order incorporated by reference the parenting plan set out in the 2019 Modification does not dictate a different outcome.

Point I is denied.

## II. The Missouri court did not err in dismissing Father's motions seeking enforcement of the Texas Order (Points II and III).

In Point II, Father argues alternatively that the Missouri court erred in dismissing his family access and contempt motions because the UCCJEA permits the Missouri court to enforce the Texas Order. For Point III, Father asserts that the Missouri court erred in denying his request to amend his pleading seeking enforcement of the Texas Order because Missouri courts are required to grant leave to amend when sustaining a motion to dismiss. We discuss these two points together because they are closely linked.

In both his October 2023 motion and his December 2023 motion, Father sought to enforce the parenting time granted to him by the Texas Order. Section 452.855.2 provides that "[a] court of this state which does not have jurisdiction to modify a child custody determination may issue a temporary order enforcing: (1) [a] visitation schedule made by a court of another state; or (2) [t]he visitation provisions of a child custody determination of another state that does not provide for a specific visitation schedule." Section 452.860.1 adds that "[a] court of this state may grant any relief normally available under the provisions of the laws of this state to enforce a registered child custody determination made by a court of another state." Father argues that these

11

provisions allow the Missouri court to enforce the Texas Order by granting compensatory time.

While Father's reliance on §§ 452.855 and 452.860 is understandable, we believe another section of the UCCJEA governs the situation presented here. Section 452.865 (Simultaneous proceeding) states,

> If a proceeding for enforcement under sections 452.850 to 452.915 has been or is commenced in this state and a court of this state determines that a proceeding to modify the [custody] determination has been commenced in another state having jurisdiction to modify the determination under sections 452.740 to 452.845, the enforcing court shall immediately communicate with the modifying court. The proceeding for enforcement continues unless the enforcing court, after consultation with the modifying court, stays or dismisses the proceeding.

In the context of this case, we read the plain language of § 452.865 to mean that, because Father brought an enforcement action in the Missouri court and a proceeding to modify was commenced in the Texas court, the Missouri court was required to communicate with the Texas court, and the enforcement proceeding continues unless the enforcing court dismisses the proceeding. That is exactly what happened here. The Missouri court conferred with the Texas court and determined that the Missouri court would "continue to enforce its Judgments until such time as [the Texas court] enters a child custody Order or Modificatio[]n Judgment," which occurred on September 29, 2023, with issuance of the Texas Order. And, in view of the Texas Order, the Missouri court dismissed the enforcement proceeding, including Father's efforts to enforce the Texas Order in the Missouri court.

No Missouri court has interpreted § 452.865, and relevant case law from other states that have adopted the UCCJEA is sparse.[9] In *Ward v. Smith*, 780 S.E.2d 702, 706 (Ga. Ct. App. 2015), a Georgia court was asked to enforce an Indiana custody order via a contempt citation. There, the court concluded that it was authorized to use its contempt powers to enforce the Indiana order. *Id.* But the Indiana court had surrendered all jurisdiction to the Georgia court. *Id.* at 704. Thus, in *Ward*, the enforcing court (Georgia), after consultation with the modifying court (Indiana), did *not* stay or dismiss the proceeding in Georgia. But, in the present case, the Missouri court did dismiss the enforcement proceeding, which the court was entitled to do after consultation with the Texas court. *See C.L. v. Z.M.F.H.*, 18 A.3d 1175, 1180 (Pa. Super. Ct. 2011) (concluding that there were simultaneous proceedings in South Dakota Tribal Court and Pennsylvania court such that the latter was required to communicate with the Tribal Court to determine which jurisdiction was the more appropriate forum); *Giventer v. Giventer*, 863 So.2d 438, 440 (Fla. Dist. Ct. App. 2003) (noting Florida's simultaneous proceedings provision states, "an enforcement proceeding in [Florida] may continue even after the court learns that a proceeding to modify is pending in [Colorado] with jurisdiction to modify; in that case, . . . the enforcement proceeding continues *unless* the enforcing court stays or dismisses it after communicating with the modifying court") (emphasis added and omitted).

---

[9] "In interpreting a uniform act, decisions from other states may provide guidance." *Schutter I*, 632 S.W.3d at 829.

In his opening brief, Father cites several cases recognizing a court's jurisdiction to enforce an out-of-state custody determination. We do not dispute the general proposition that, in accordance with the UCCJEA, Missouri courts will recognize out-of-state custody orders. But, on the facts of this case, the Missouri court did not err in declining to enforce the Texas Order, having ceded all jurisdiction for custody matters involving the parties to the Texas court. To conclude that the Missouri court erred in declining to enforce the Texas Order would create the possibility of inconsistent enforcement of the Texas Order and subvert the purpose of the UCCJEA "to avoid jurisdictional competition and conflict." *Grega*, 524 S.W.3d at 155.

Point II is denied.

For purposes of Point III, Father acknowledges that he did not provide a copy of the Texas Order to the Missouri court when requesting that the Missouri court enforce the Texas Order. Thus, in his motion for new trial, Father sought leave to file the Texas Order with the Missouri court.[10] But, as our discussion of Point II shows, failure to file the Texas Order with the Missouri court is not why the Missouri court declined to enforce the Texas Order. And our analysis of Point II would not be different had Father filed the Texas Order with the Missouri court. Our conclusion with respect to Point II renders Point III moot.

Point III is denied.

---

[10] In support, Father cites Rule 55.33(a), which provides, as applicable here, a "pleading may be amended only by leave of court . . . and leave shall be freely given when justice so requires." He also cites Rule 67.06, which states, "on sustaining a motion to dismiss a claim . . . the court shall freely grant leave to amend."

14

**III.** **The Missouri court erred in dismissing Father's motion to modify child support for lack of jurisdiction under the UCCJEA (Point IV).**

In Point IV, Father contends that the Missouri court erred in dismissing his motions to modify child support on the basis of the UCCJEA because the UCCJEA does not govern support proceedings. We agree.

As we explained in *Schutter I*, the UCCJEA's definition of "child custody determination" does "not include an order relating to child support or other monetary obligations of an individual." *Schutter I*, 632 S.W.3d at 831 (quoting § 452.705(3)). Accordingly, in that case we concluded that the Missouri court erred in dismissing Father's motion to quash Mother's garnishment of his wages because "[t]he monetary judgments that Mother attempted to collect by garnishment of Father's wages were not child custody determinations and, similarly, Father's motion to quash the garnishment did not seek to modify child custody." *Id.* "Sections 452.745 and 452.770 do not address, and therefore did not deprive, the trial court's jurisdiction to execute on the monetary judgments; and, likewise, did not deprive the trial court of jurisdiction to rule on Father's motion to quash garnishment." *Id.*; *see also State ex rel. Brantingham v. Grate*, 205 S.W.3d 317, 320 (Mo. App. W.D. 2006) (initial state retains jurisdiction over child support unless *both* parties no longer reside there or all parties consent in writing to assumption of continuing exclusive jurisdiction by another state); *Govoni v. Baum*, 156 S.W.3d 434, 435-36 (Mo. App. E.D. 2005) (because Illinois court entered initial child support judgment, Illinois retained exclusive jurisdiction to modify child support, though wife moved to Missouri).

15

The same result applies here. Our decision in *Schutter I* and § 452.705(3)'s exclusion of "support" matters from the definition of "child custody determination" make clear that Father's motions to modify his support obligation are not subject to the UCCJEA, just as was the case with his motion to quash Mother's wage garnishments in *Schutter I*. Thus, the Missouri court erred in relying on the UCCJEA as the basis for dismissing Father's motions to modify child support.[11]

We reject Mother's arguments to the contrary. Mother initially argues that dismissal of Father's motions to modify child support is not preserved for appeal because Father's motions were filed in Case No. 12AE-CV00757-09, but the only case on appeal is Case No. 12AE-CV00757-10. We rejected a similar argument by Mother in *Schutter I*. There, we stated,

> The trial court's judgment of dismissal does not distinguish the separate cases and subcases, and instead makes clear that it is dismissing for lack of jurisdiction/authority (as provided under the UCCJEA) any and all pending motions, in all cases and subcases. . . . First, there is nothing in the record that indicates that the trial court dismissed Father's motion to quash on that basis. In fact, it is quite clear that the trial court did not focus on the particular subcase number, as it ordered that all pending motions should be dismissed in the original case and in all subcases (in accordance with the UCCJEA). Even if Father's filing in the wrong subcase number had been the trial court's basis for dismissal of the motion to quash, we would find

---

[11] While the UCCJEA does not govern child support, the Uniform Interstate Family Support Act (UIFSA) does. *State ex rel. Brantingham v. Grate*, 205 S.W.3d 317, 320 (Mo. App. W.D. 2006).

We "will affirm [a] dismissal on any meritorious ground stated in the motion." *Grosshart v. Kansas City Power & Light Co.*, 623 S.W.3d 160, 166 (Mo. App. W.D. 2021) (quoting *Hill v. Freedman*, 608 S.W.3d 650, 654 (Mo. App. W.D. 2020)). But Mother did not raise the UIFSA in her motion to dismiss Father's motions for modification of child support, and the trial court did not rely on the UIFSA in denying Father's motions. Thus, we do not consider the applicability of the UIFSA in determining whether the trial court erred in dismissing Father's motions for modification.

16

that reason unavailing. *See Staten v. State*, 624 S.W.3d 748, 752 (Mo. banc 2021), where our Supreme Court declined to find that the trial court lacked jurisdiction to enter a post-conviction judgment, simply because the case had proceeded as a subcase of the criminal case, rather than as a separately filed civil case . . . .

*Schutter I*, 632 S.W.3d at 831 n.8.

The same analysis and result apply here. The Missouri court entered a judgment dismissing all of Father's motions without acknowledging in which subcase each motion had been filed. Instead, the court stated that it had "lost exclusive, continuing jurisdiction . . . over matters involving the custody and support of [Son]," and ordered that "no further pleadings shall be filed in this case, or its sub-cases, by any party except those necessary to effect" an appeal. Thus, regardless of the subcase in which Father filed his motions to modify child support, his Point IV is preserved for appeal.

Mother also argues that Father's motions were deficient because they did not mention child support. That is inaccurate. In his first motion, Father moved to modify or correct his child support payment because the current garnishment order was excessive and he lacked the necessary funds to comply. In his second motion, Father requested a child support modification under § 452.370, alleging a substantial and continuing change in circumstance since the date of the last order.

Point IV is granted.

## Conclusion

The judgment dismissing Father's family access and contempt motions is affirmed. The judgment dismissing Father's motions to modify child support is reversed,

17

and the case is remanded to the Missouri court for further proceedings consistent with this opinion.

_____
Karen King Mitchell, Presiding Judge

Lisa White Hardwick and Mark D. Pfeiffer, Judges, concur.